**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION**

ROXANNE ROBERT GARRY          CIVIL ACTION NO. 18-1005

VERSUS                                      JUDGE MICHAEL J. JUNEAU

U.S. COMM'R S.S.A.                  MAGISTRATE JUDGE WHITEHURST

## REPORT  AND  RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be AFFIRMED.

### ADMINISTRATIVE PROCEEDINGS

The claimant, Roxanne Robert Garry, fully exhausted her administrative remedies prior to filing this action in federal court.  The claimant filed an application for disability insurance benefits ("DIB") and an application for supplemental security income benefits ("SSI"), alleging disability beginning on May 9, 2015.[1]  Her applications were denied on January 8, 2016.[2]  The claimant requested a hearing,[3] which was held on August 28, 2017, before Administrative Law Judge Rowena E.

---

[1]  Tr. 11.

[2]  Tr. 11.

[3]  Tr. 11.

1

DeLoach.[4]  The ALJ issued a decision on December 26, 2017,[5] concluding that the claimant was not disabled within the meaning of the Social Security Act ("the Act") from May 9, 2015 through the date of the decision.  The claimant asked for review of the decision, but the Appeals Council concluded on May 31, 2018 that no basis existed for review of the ALJ's decision.[6]  Therefore, the ALJ's decision became the final decision of the Commissioner for the purpose of the Court's review pursuant to 42 U.S.C. § 405(g).  The claimant then filed this action seeking review of the Commissioner's decision.

## SUMMARY OF PERTINENT FACTS

The claimant was born in 1970.  At the time of her alleged onset disability date, she was 45 years of age, a younger individual.  She has a high school education and has past relevant work as a housekeeper.[7] She alleges that she has been disabled since May 9, 2015 due to neck pain, back pain, shoulder pain, high blood pressure, and hand and finger pain.[8]

---

[4]  The hearing transcript is found at Tr. 35-71.

[5]  Tr. 11-21.

[6]  Tr. 1 – 4.

[7]  Tr. 288-89.

[8] T. 287.

## ANALYSIS

### A.   STANDARD OF REVIEW

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence.[9] "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[10] Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[11]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[12] In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner.[13] Conflicts in the evidence and credibility assessments are for the Commissioner to

---

[9] *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

[10] *Villa v. Sullivan*, 895 F.2d at 1021-22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

[11] *Hames v. Heckler*, 707 F.2d at 164 (quoting *Hemphill v. Weinberger*, 483 F.2d 1137. 1139 (5th Cir. 1973), and *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973)).

[12] 42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d at 173; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[13] *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1021; *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Carey v. Apfel*, 230 F.3d at 135; *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001).

resolve, not the courts.[14]   Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination:  (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[15]

## B.   Entitlement to Benefits

The Disability Insurance Benefit ("DIB") program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[16]   Every individual who meets certain income and resource requirements, has filed an application for benefits, and is determined to be disabled is eligible to receive Supplemental Security Income ("SSI") benefits.[17]

The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[18]   A claimant shall be determined to be disabled only if his physical or mental impairment

---

[14] *Martinez v. Chater*, 64 F.3d at 174.
[15] *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991); *Martinez v. Chater*, 64 F.3d at 174.
[16] See 42 U.S.C. § 423(a).
[17] 42 U.S.C. § 1382(a)(1) & (2).
[18] 42 U.S.C. § 1382c(a)(3)(A).

4

or impairments are so severe that he is unable to not only do his previous work, but cannot, considering his age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.[19]

## C.   **Evaluation Process and Burden of Proof**

The Commissioner uses a sequential five-step inquiry to determine whether a claimant is disabled. This process required the ALJ to determine whether the claimant (1) is currently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is able to do the kind of work he did in the past; and (5) can perform any other work at step five.[20] If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends. "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis."[21]

---

[19] 42 U.S.C. § 1382c(a)(3)(B).

[20] 20 C.F.R. § 404.1520; see, e.g., *Wren v. Sullivan*, 925 F.2d at 125; *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

[21] *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 914 U.S. 1120 (1995) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity[22] by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the record.[23] The claimant's residual functional capacity is used at the fourth step to determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work.[24]

The claimant bears the burden of proof on the first four steps.[25] At the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy.[26] This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence.[27] If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding.[28] If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends.[29]

---

[22] 20 C.F.R. § 404.1520(a)(4).
[23] 20 C.F.R. § 404.1545(a)(1).
[24] 20 C.F.R. § 404.1520(e).
[25] *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.
[26] *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.
[27] *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).
[28] *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.
[29] *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992), citing *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988). See, also, 20 C.F.R. § 404.1520(a)(4).

### D.     THE ALJ'S FINDINGS AND CONCLUSIONS

In this case, the ALJ determined, at step one, that the claimant has not engaged in substantial gainful activity since May 9, 2015, her alleged onset date.[30] This finding is supported by the evidence in the record.

At step two, the ALJ found that the claimant has the following severe impairments: cervical disc defects with multilevel fusion with right C6-7 radiculopathy and bilateral carpal tunnel syndrome.[31] This finding is supported by evidence in the record.

At step three, the ALJ found that the claimant has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment.[32] The claimant does not challenge this finding.

At step four, the ALJ found that the claimant is not capable of performing her past relevant work.[33]

At step five, the ALJ found that the claimant has the residual functional capacity to perform sedentary work with occasional climbing stairs and ramps, balancing, stooping, kneeling, crouching, crawling, and reaching overhead bilaterally. She can frequently handle and finger. Additionally, she cannot work in

---

[30] Tr. 13.
[31] Tr. 13-14.
[32] Tr. 14.
[33] Tr. 20.

environments where she would be exposed to vibration, extreme cold, and hazards such as unprotected heights and moving machinery.  The ALJ concluded that the claimant was not disabled from May 9, 2015 through the date of the decision because there are jobs in the national economy that she can perform.[34] The claimant challenges this finding.

E.    THE ALLEGATIONS OF ERROR

The claimant alleges that the ALJ improperly rejected evidence of and failed to account for the claimant's non-exertional impairments in assessing her residual functional capacity.  Specifically, the claimant argues that the ALJ's RFC assessment is not based on all relevant evidence, is premised on the ALJ's own unsupported opinions regarding limitations presented by Ms. Garry's medical condition (cervical radiculopathy, et al.), and fails to properly consider Ms. Garry's ability to perform sustained work activities on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule) in light of the pain, burning, and numbness she experiences in her upper extremities and her need for unscheduled breaks.  Consequently, the claimant contends the ALJ's RFC assessment is not supported by substantial evidence.

---

[34] Tr. 21.

### Residual Functional Capacity

Residual functional capacity is considered the individual's maximum remaining ability to perform sustained work activities in an ordinary work setting *on a regular and continuing basis*. SSR 96-8p, 1996 SSR LEXIS 5, *5. Although the ALJ is responsible for determining a claimant's RFC by reviewing all of the evidence, *Young v. Berryhill*, 689 F. App'x 819, 821 (5th Cir. 2017) (citation omitted), the claimant has the burden of production at Step 4 when RFC is determined. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007); 20 C.F.R. §§ 404.1512, 416.912. The ALJ has the authority and duty to weigh the evidence and reach any conclusion supported by substantial evidence. *Gonzales v. Astrue*, 231 F. App'x 322, 324 (5th Cir. 2007) (citations omitted).

In this case, the ALJ determined the claimant can perform sedentary work, meaning she can: lift up to 10 pounds at a time and occasionally carry articles like docket files, ledgers, and small tools; sit for 6 hours in an 8-hour workday; and stand and/or walk 2 hours in an 8-hour workday. The ALJ determined that the claimant's capacity for sedentary work was further restricted, in that she could: occasionally climb stairs or ramps, balance, stoop, kneel, crouch, crawl, and reach overhead bilaterally; frequently handle and finger; and never work in environments where she would be exposed to vibration, extreme cold and hazards such as unprotected heights and moving machinery. The ALJ determined that the claimant could not do her past

relevant work as a housekeeper but could perform the occupations of call out operator and charge account clerk.[35]

Once an RFC has been determined, the claimant has the burden of production at Step 4. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007); 20 C.F.R. §§ 404.1512, 416.912.  In support of her argument that the ALJ improperly assessed her RFC, the claimant argues that after presenting with complaints of neck, arm, and hand pain, on August 10, 2015, she underwent a posterior cervical decompression from C3 through C7 with removal of pressure off the spinal cord and subsequent fusion with lateral screws placed on the right from C3 through C7 and on the left at C3 through C5 and C7.  On October 20, 2015, the claimant attended her two-month post-surgical follow-up and reported right posterior cervical pain radiating to the right shoulder into the right upper arm.  Physical examination showed normal alignment and some tenderness to palpation at C5-6 and C6-7, with decreased range of motion that was painful.  However, the claimant's motor testing of the right upper extremity revealed 5/5 strength in C5 through C7, and 4+ strength of the left upper extremity in C5 through C7.  The final assessment was spinal stenosis at C2 through C7 and ligamentous injury.[36]

---

[35] Tr. 19-20.
[36] Tr. 540-48.

On December 18, 2015, the claimant reported that although the pain in her left arm had improved, the pain in her right arm continued and was constant. However, physical examination showed no swelling or erythema of any joint, no deformities or point tenderness, and negative straight leg testing. The claimant had painful range of motion of her right shoulder and decreased range of motion of the cervical spine with extension at 30/60, lateral flexion at 25/45, rotation at 60/80, but complete forward flexion at 50/50. Her grip strength bilaterally was 5/5 with intact dexterity, and she had 5/5 strength in all muscle groups. She had normal gait and stable station, was able to bend at the waste from standing position, stand on tiptoes and heels, and walk on heels unassisted. She did have some difficulty squatting due to the left knee. The final assessment was history of spinal stenosis, status post cervical fusion, right arm radiculopathy, hypertension treated, and left knee pain.[37]

On January 19, 2016, Dr. Munshi reported that examination of the claimant's cervical spine showed normal alignment and tenderness to palpation at C5-6 and C6-7. Range of motion was decreased and painful. The claimant's diagnosis was spinal stenosis and ligamentous injury. Dr. Munshi noted that the claimant "hurts though she is walking better. Her x-rays are fine and she will now see me in 6 months."[38]

---

[37] Tr. 550-555.
[38] Tr. 1082.

On January 25, 2016, Dr. Ilyas Munshi opined that the claimant was disabled for a period of approximately 6 months because she cannot lift, push, or pull greater than 5 pounds, and could not sit, stand, or walk for extended periods, or twist, bend, stoop, kneel or crawl or reach overhead.[39]  On March 2, 2016, imaging showed the following:

C2-3 level is within normal limits

At C3-4 there is posterior cervical decompression and posterior hardware from posterior fusion.

C5-6 level demonstrates posterior cervical decompression.  Posterior fusion is visible.

C6-7 level posterior cervical decompression with posterior fusions.  No foraminal disease.  C7-T1 level also demonstrates postoperative change with no evidence of focal abnormality.  There is no evidence of abnormal contrast enhancement.

Impression:  Interim  posterior  cervical  decompression  with posterolateral fusion and hardware as described.  Stable appearance of myelomalacia at C3 and C4.[40]

On March 30, 2016, the claimant underwent an EMG study which showed chronic right C6 and C7 radiculopathy without denervation, superimposed bilateral moderate to severe median sensory neuropathy at the wrist, and superimposed mild left ulnar neuropathy at the elbow.[41]

---

[39] Tr. 694.
[40] Tr. 1067.
[41] Tr. 1053.

In July 2016, the claimant saw David P. Kosnosky, MD at SWLA Center for Health Services – Lafayette, complaining of neck, shoulder and arm pain.  Her examination showed decreased range of motion, and the claimant was prescribed several pain medications.  On November 25, 2016, the claimant went to the emergency room at Lafayette General Medical Center complaining of pain radiating down her right arm.  On examination, she had no swelling and a review of all of her systems was negative.  She was prescribed pain medication and discharged.[42]

The claimant treated with Sunset Medical Center from October 2016 – May 2017 with Nurse Practitioner Jimmy Legros, III.[43]  In December 2016, the claimant received a physical therapy referral to Our Lady of Lourdes.  On February 1, 2017, the claimant returned to Mr. Legros reporting right arm pain and shoulder spasms.  She received paid medication prescriptions again.[44]  On the same day, she went to the Lafayette General emergency room complaining of right sider upper neck pain, radiating into her right upper extremity.  The claimant received an injection of Morphine and additional pain medication.[45]  Her final assessment was trapezius muscle spasms and headaches.[46]  The claimant returned to the emergency room on

---

[42] Tr. 619-22.
[43] Tr. 932-950.
[44] *Id.*
[45] Tr. 731-864.
[46] *Id.*

April 15, 2017 for neck pain.  Her examination revealed normal range of motion and sensation and her final assessment was chronic neck pain.[47]

A cervical x-ray from May 2017 showed cervical manipulation of the cervical spine and degenerative changes.  On May 18, 2017, the claimant received Flexeril and Tramadol from Jimmy Legros.  The claimant attended physical therapy from May 3-25, 2017 with Opelousas General Hospital.  She returned to physical therapy with Acadiana Physical Therapy on July 27, 2017.  Her range of motion at that time was 25 degrees throughout the cervical spine, and her strength was 4/5 on right upper and 4+/5 on left upper extremity with a positive Spurlings test.  The claimant was to restart therapy three times a week for six weeks.

On August 15, 2017, the claimant underwent a second ENC study for right leg pain and right leg numbness only.  Her diagnosis remained unchanged with right chronic C5-C6 radiculopathy without denervation and superimposed right medial neuropathy at the wrist (carpal tunnel syndrome) only.[48]

The claimant argues that the diagnostic testing in the record supports her complaints of constant and disabling pain.  The ALJ determined that although the claimant continues to have pain, her statements concerning her pain are not entirely consistent with the medical findings.  Specifically, the ALJ did not find that the

---

[47] *Id.*
[48] Tr. 1137-42.

14

claimant was free from pain, but concluded that the claimant's pain was not so severe that all work was precluded.[49]  Pain can constitute a disabling impairment.  *Falco*, 27 F.3d at 163.  However, pain is disabling only when it is "constant, unremitting, and wholly unresponsive to therapeutic treatment."  *Selders v. Sullivan*, 914 F.2d 614, 618-19 (5th Cir. 1990).  The ALJ discussed the electromyograms and nerve conduction studies, which confirmed signs compatible with bilateral carpal tunnel syndrome (CTS).  However, the ALJ noted the claimant had never received treatment for CTS.[50] Tr. 18. A lack of treatment may be an indication of non-disability and, thus, an appropriate consideration in the consideration of the credibility of the claimant's subjective complaints, absent some valid explanation for the lack of treatment.  *See Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990; *Jones v. Heckler*, 702 F.2d 616, 622 (5th Cir. 1983); *Clayborne v. Astrue*, 260 F. App'x 735, 737 (5th Cir. Tex. 2008).

The ALJ also recognized that the record failed to show muscle atrophy in the claimant's upper extremities, which naturally results when an individual avoids painful movement.[51]  The absence of objective factors indicating the existence of severe pain, such as muscular atrophy, can justify the ALJ's conclusion that a

---

[49] Tr. 18-19.
[50] Tr. 18.
[51] *Id.*

15

claimant does not suffer from "severe, persistent, and intractable pain." *Hollis v. Bowen*, 837 F.2d 1378, 1384 (5th Cir. 1988).  Finally, the ALJ considered that the medical records do not mention the pain relief techniques the claimant stated she used.[52] If a claimant purports to obtain some relief from a particular technique, some reference to the claimant's method would be reflected in the medical records. Here, the treatment notes reflect that the claimant achieved some pain relief from ice and medication,[53] but there appears to be no mention of the claimant having to lie down or shower to relieve pain.  The ALJ also noted that although the claimant had gone to physical therapy, there was no evidence that she had participated in the prescribed home exercise program on a regular basis, and her most recent complaint when she went to physical therapy was stiffness.

"The ALJ must consider subjective evidence of pain, but it is within [her] discretion to determine the pain's disabling nature [and] such determinations are entitled to considerable deference." *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991) (citations omitted).  Furthermore, when an ALJ declines to adopt a claimant's subjective statements regarding limitations, the ALJ must articulate reasons for discrediting them. *See Abshire v. Bowen*, 848 F.2d 63.  The ALJ is not required to follow formalistic rules in the articulation. *Falco v. Shalala*, 27 F.3d 160, 164 (5th

[52] *Id.*
[53] Tr. 543, 1071, 1081.

16

Cir. 1994). "These are precisely the kinds of determinations that the ALJ is best positioned to make." *Id*.; *see also Harrell v. Bowen*, 862 F.2d 471, 480 (5th Cir. 1988) ("[T]he evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ") (citations omitted).

Here, the ALJ thoroughly discussed the medical and nonmedical evidence and explained the weight she attributed to that evidence, and this Court should not re-weigh the evidence. *See Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018) (stating that the court "[w]ill not re-weigh the evidence . . . even if [it believes] the evidence weighs against the Commissioner's decision.").

After a review of the medical evidence in the record, the undersigned concludes that the ALJ's RFC Assessment – and her assessment of the claimant's pain -- is supported by substantial evidence in the record.

**Maintaining Employment**

With respect to the claimant's argument that the ALJ erred in failing to make a specific finding that she can maintain employment, the undersigned concludes that this argument is without merit. The claimant appears to argue that the ALJ was required not only to make a finding that she can perform work, but also to make an explicit finding that she can maintain any employment she might secure. The claimant argues that because the decision does not include an explicit finding as to whether she could maintain employment, the ALJ committed legal error requiring

17

remand. In *Frank v. Barnhart*, 326 F.3d 618 (5th Cir. 2003), however, the Fifth Circuit clarified that every case does not require a separate finding that a claimant can maintain employment. In *Frank*, the Fifth Circuit acknowledged that it had required a separate consideration for maintaining employment where there is "a situation which, by its nature, the claimant's [impairment] waxes and wanes in its manifestation of disabling symptoms," but clarified that the intermittently recurring symptoms (waxing and waning) must be of sufficient frequency or severity to prevent the claimant from holding a job for a significant period of time; and in the absence of such a showing, the claimant's ability to maintain employment is subsumed in the RFC finding and no separate finding as to the ability to maintain employment is required. *Id.* at 619-20.

In this case, the ALJ concluded that the claimant has the ability to perform work as an initial matter and does not demonstrate an inability to maintain employment thereafter. After a careful review of the record, the undersigned concludes that substantial evidence supports the ALJ's conclusion.

### **Consultative Examiner's Medical Opinion**

Finally, the claimant argues that the ALJ erred in attributing "considerable weight" to the opinion of consultative examiner Julana Monti, M.D. Dr. Monti opined that the claimant could sit for eight hours, stand for eight hours, walk for

eight hours, and lift/carry objects weighing up to ten pounds.[54] Dr. Monti also determined the claimant would have difficulty driving and performing fine motor tasks such as writing for prolonged intervals, but she anticipated improvement within six months.[55]

The ALJ's assessment that the claimant could perform sedentary work is consistent with Dr. Monti's opinion concerning the claimant's ability to sit, stand, walk, and lift/carry.[56]  With respect to Dr. Monti's assessment of the claimant's capacity for upper extremity use, the ALJ explained she "accepts that [claimant] cannot finger or handle on [a] constant basis, but the evidence does not support a conclusion that she cannot do these activities on a frequent basis, which is defined as 1/3 to 2/3 of the workday."[57]  Nothing in the ALJ's discussion suggests that her RFC finding relied on future improvement.  However, even if the claimant could show she was limited to only occasional ("occurring from very little up to one-third of the time" *see* SSR 83-10, 1983 SSR LEXIS 30, *13-14) handling and fingering, she cannot establish harm, because the jobs the vocational expert identified for the claimant require only occasional handling and fingering.  Specifically, the VE testified that an individual with the claimant's RFC and vocational profile could

---

[54] Tr. 553.
[55] Id.
[56] Tr. 14, 553; 20 C.F.R. §§404.1567(a), 416.967(a).
[57] Tr. 19.

perform work as a call-out operator, and there were 50,240 such jobs in the national economy. Tr. 21, 62. According to the United States Department of Labor's *Selected Characteristics of Occupations*, call-out operator (DOT 237.367-014) requires only occasional handling and fingering. The number of such jobs, 50,240, is well above numbers that courts have determined were numerically significant. *See Warren v. Astrue*, No. 09-CV-417, 2011 WL 344268, at * 3 n. 2 (E.D. Tex. Aug. 5, 2011) (citing *Perez*, 415 F.3d at 460 (providing that 2,500 jobs in the state and 25,000 jobs nationally are a "significant number of jobs"); *Anderson v. Comm'r of Soc. Sec.*, 406 F. App'x 32, 35 (6th Cir. 2010) (providing fewer than 1,000 regional jobs can be a significant number); *Hall v. Bowen*, 837 F.2d 272, 273, 275-76 (6th Cir. 1988) (providing that 1,350 jobs is a significant number of jobs in local area and national economy); *Lee v. Sullivan*, 988 F.2d 789, 794 (7th Cir. 1993) (stating that 1,400 regional jobs is a significant number); *Trimiar v. Sullivan*, 966 F.2d 1326, 1330-32 (10th Cir. 1992) (stating that 850-1,000 potential jobs were a significant number of jobs)).

Consequently, even if the claimant could show that the RFC finding should have reflected a limitation to occasional handling and fingering, jobs the claimant can perform would still exist in significant numbers, and the ALJ's conclusion that the claimant was not disabled would remain unchanged.

"Procedural perfection in administrative proceedings is not required [and the] Court will not vacate a judgment unless the substantial rights of a party have been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988); *see also Brock v. Chater*, 84 F.3d 726, 729 (5th Cir. 1996) (5th Cir. 1988) ("[Courts] will not reverse the decision of an ALJ where the claimant makes no showing that he was prejudiced in any way by the deficiencies he alleges.").

## CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned finds that the ALJ applied appropriate legal standards in ruling on this case, and the ALJ's findings are based on substantial evidence in the record.  Accordingly,

**IT IS THE RECOMMENDATION** of the undersigned that the decision of the Commissioner be **AFFIRMED** and this matter dismissed with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within

21

fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

THUS DONE in Chambers on this 3rd day of February, 2020.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE